Our next case is Sisvel International v. Cradle Point, et al., 2022, 1494. Mr. Gariazza, when you are ready. Good morning. May it please the Court. Robert Gariazza on behalf of Appellant Sisvel. There are several issues that are discussed in the briefing today for this case, and I'm happy to answer questions about any of them. But if I may, I'd like to focus on two, and maybe a third if I have the time to do that. The first issue I'd like to focus on is the Board's analysis of reasonable expectation of success, which was one footnote on page Apex 21. And in that footnote, the Board simply said that the known disadvantages of Qualcomm's approach are not considered by the Board to be technical difficulties. There's no unusual problems that arise in making the change proposed by Qualcomm. As we explained in the briefing on page 37 of the blue brief, this Court's precedent does recognize, contrary to what the Board said, that technical difficulties in implementing a system should be considered and can be considered in the reasonable expectation of success analysis. And for that reason alone, for example, under the Endo case, which was cited to the Board, which was cited to this Court, it was not cited by Red, I'm happy to discuss it, but that case does show that things such as being less effective, for example, the catalytic hydrogenation in that case of low ABUC oxymorphone was considered one process was less effective. The Court also noted how other processes had material difficulties or had higher chances or had undesirable outcomes. All of those were relevant to reasonable expectation of success. And those are the same type of factors here that we told the Board implementing Qualcomm and the TS standard would cause. Reduction of PDU size, for example, by 50% is an undesirable outcome. It also makes it less efficient. These are the technical difficulties that the Board simply said are known disadvantages and did not consider fully in the reasonable expectation of success analysis. Are you saying that the Board didn't consider them or didn't consider them technological difficulties and should have considered them technological difficulties? Help me understand exactly what you're faulting the Board for on this point. I think it's probably a little bit of the first one and definitely the second one. It's that the Board said we do not consider the known disadvantages to be technological difficulties. In other words, the fact that PDU size would be reduced by 50% if you integrated Qualcomm into the TS standard here was not a technical difficulty. But, in fact, that's exactly what a technical difficulty would be. For example, VOIP would require octet sizes for PDUs of 95 or 97. If Qualcomm was integrated into the TS standard, that would not be available because the maximum octet size would be 64. But I thought the Board was saying the person with skill in the art would know how to do this. They would see the reduction in size to 500 bits, I think it is, as a disadvantage. I could do it. I know how to do it. It would be a disadvantage, but I would weigh it against the advantages or benefits. And the Board says the person with skill in the art would say, well, the benefits somewhat outweigh the disadvantages. Isn't that the Board's analysis, and isn't there substantial evidence to support that? I think if the Board had said that, Your Honor, we would be in a different scenario. But they didn't. What they did say at the end of that paragraph in their footnote was the record does not suggest any unusual problems would arise in making the change. In other words, it seems from that paragraph, that sole discussion of reasonable expectation of success, what the Board is looking at was merely operability. Could you potentially do that? And one simple analogy, the only one that I could think of, is take, for instance, that you had a biofuel that could replace gasoline. It could be used in trains, planes, and automobiles. But you have prior art that has a different process for making something with an art group that falls under that claim. But it cannot be used in jets. It cannot be used in trains. And if you use it in your car, if you drive over 15 miles an hour, your engine shuts down. Those would be types of technical difficulties that one of ordinary skill in the arts should consider in the hypothetical analysis for motivation combined with this reasonable expectation of success, not operability but success, in determining whether or not the invention was obvious. And it seems like what the Board said in that scenario would be, Well, your car can still be driven at 15 miles an hour. That's all we need to show. Because there's nothing unusual in terms of operability. But as ENDO recognizes, there's tradeoffs. And when you have these tradeoffs, that does go to the heart of reasonable expectation of success. And there is critical objective evidence in this case that shows that POSITA would not have expected success because this particular modification of TS was rejected by the working group. In other words, POSITA is out there and said, We're not going to do this. And so we would submit that for that reason alone, it would have to go back. The second issue, though, I would like to bring to the Court's attention, I think, is one that doesn't require remand. It requires outright reversal. We have consistently throughout the brief, at least for the first half of it, we objected to the Board's findings and the basis for the Board's findings under substantial evidence. However, on page 44 of the brief, we refer back to those and we say, Assume that the Board is right. Assume that the Board's findings on the bottom of Apex 22 about Qualcomm are correct. That, yes, the Qualcomm flag does show you that the first full SDU in the PDU is contained entirely within the PDU. That finding, that factual finding about what Qualcomm teaches, does not satisfy Element 1B of the claims. Element 1B of the claims does not say the first full SDU. It requires something additional. It requires the first octet of the PDU to be the first octet of the SDU. In other words, it says you have to start at the beginning. So even under the Board's findings, even arguendo assuming that the Board was right, that the Qualcomm flag teaches that the first full SDU in the PDU could potentially be flagged by Qualcomm, that's not the claimed invention. The claimed invention says that in this window, you have to start at the beginning. The PDU octet has to line up with the SDU octet. And that is indeed the Board's express construction, which is not on appeal here. The Board's construction of length indicator on Apex 12 says that the length indicator, it requires providing information that the first octet of the PDU is the first octet of the SDU. Under the Board's own construction of that limitation, they have to align. But the Board's finding of what Qualcomm taught wasn't that they aligned. It was that you had the first full SDU in the PDU. And the reason that matters in the context here is that there's no material dispute that SDUs do not always start at the beginning of the PDU. The patent itself gives an example in the prior art and in the inventive in Figure 12. And if you look at Figure 12, it shows this very common situation. It's at Apex 138. You'll see in the middle there, the second PDU says there's a last part, three octets, an RL size SDU size of 40 octets. So there's a leftover portion. So that next SDU, SDU of size 34 octets in that second PDU is, as the figure says, it's a complete SDU. So in that example, you have an SDU that's starting three octets into the PDU, and it's complete. Under the board's factual finding of Qualcomm, that complete 34 octet long SDU would be contained entirely in the PDU, and it would be the first full SDU in the PDU. So in that instance, the flag would go up. And that's the diagram that we provided on page 27 of the blue brief. That's number four in that diagram. The Qualcomm system, accepting the board's factual findings as true, would indicate that flag for that SDU. But that SDU, indisputably and undeniably, is not the first octet of the first SDU. So under that own factual finding of the board, there is no element taught. The full element of element 1B is not taught by Qualcomm. Even if you were to take the board's findings as undisputed. In addition to that, I would just like to touch, if I have a few minutes, on the length indicator itself. The board essentially found that the length indicator in Qualcomm was a 7-bit length indicator. And because of that, there was no requirement for the petition to show that you'd have a motivation to modify that 7-bit length indicator, to fit it into the 7-bit length indicator in the TS reference. What the board said on Apex-19 is that SYSVIL is using this length indicator language loosely. Because a length indicator can also indicate something besides length. And there's no dispute about that. A length indicator can also indicate something besides length. However, what the board said is when you have something like a 7-bit length indicator, it does not have to indicate a 7-bit long PDU, so you have 128 octets in the PDU itself. The problem with that, however, is that the length, the bit length of the length indicator, is inextricably intertwined with the length of the PDU that it can represent. We show your honors the math on page 20. The patent also explains, and the TS standard also explains, as we cited in the reply brief, it explains that if you have up to 125 octets, then you use a 7-bit length indicator. If you use over 125, that's when you switch to this 15-bit length indicator. If the board were correct that a 7-bit length indicator had nothing to do with the actual length, all 7 bits didn't have to be capable of representing the PDU, the statement that you use a 7-bit length indicator up to 125, that's in the patent, that's in the TS reference, wouldn't be true because the Qualcomm 6-bit length indicator could only represent 64 PDUs. That's the math that we showed your honors in detail on page 20 of the blue brief. I see that I'm into my rebuttal time. Unless your honors have any questions, I'd like to take a minute. We'll stand before you. Thank you, your honors. Mr. Yonais. May it please the court, Guy Yonais of Pearl Cone for the appellees and petitioner, below petitioners. If the court has any questions, I can answer them. But essentially responding to my friend's arguments, the first was the reasonable expectation of success. There is no doubt at all that the Qualcomm proposal to modify the technical specification would be operable. It would work. They're pointing to a disadvantage, which is that you would have to reduce the length of the PDUs, the packets that you stuff the SDUs into, and Qualcomm recognized that. They said, yeah, it means smaller PDUs. But there was unrebutted evidence about the advantages of doing that. Dr. Olivier, our expert below, talked about the reliability advantages of doing that, and that was unrebutted by either of patent owner's experts. They had two experts below. Both of them, they talked about the disadvantage of the smaller PDUs, and that was acknowledged by Qualcomm and by our expert. But they did not rebut the advantages that could outweigh those disadvantages. So this is not an issue of operability. It would work. There's no doubt that it would work. And that's, you know, we just don't see the problem there with motivation to combine. Regarding the issue of whether the combined references teach every element, they certainly do. And the Qualcomm reference is somewhat concentrated because it's distributed at these working groups where everyone speaks the same language and they understand the technology pretty well. So it's a little bit concentrated, but it certainly discloses that the modified length indicator indicates that the first octet of the PDU is the first octet of an SDU that the length indicator refers to the end of. And I don't know if to get into any more technical detail here, but if Your Honors have any questions, I'm happy to answer those. But that's not a difference between the claim and the Qualcomm modification to the technical specification. Where would we go in the record to understand that? Because Mr. Garris says the Board seems to have misunderstood exactly how the first octets have to line up. I will be honest that I didn't entirely follow the argument. I think the Board understood the claim, applied the reference correctly. What I understand the claim to be saying, the claim doesn't tell you how to construct the PDU out of SDUs. It doesn't tell you you must start a PDU with an SDU. It just says if the first octet of the PDU is the first octet of the SDU, that's indicated by the length indicator. And that's exactly what Qualcomm shows. You can see very clearly in the graphic of Figure 3. And this is in the – the Qualcomm reference is at Appendix 1681. It's also – the figures are reproduced in the various briefs. But the figure I'm referring to here is Figure 3 at Appendix 1684. And what we can see here is the way that the flag, which is indicated at the top box of the length indicator, shows that the first – that the beginning of the PDU, meaning the first octet of data, is the beginning of an SDU. For example, if we look at Scenario A, right, we have three PDUs, which are the protocol packets, and the SDUs are the audio packets that the service will put out, the SDUs. So you have SDU 1. And because it begins at the beginning of the PDU, meaning its first octet of data – the first octet of data is the first octet of the PDU as well, we have a yes in the flag. First SDU included, meaning is the first octet of the PDU the first octet of the SDU. That's exactly what that means. And the bottom portion of the box with the arrow shows where the end of the SDU is. So what we have – the length indicator, which is comprised of the flag and the address location, tells you precisely that this SDU has its beginning and its end in this PDU. And for example, the next one over, if you look at SDU 2, you can see that there is a length indicator to show how long the SDU is, but you have a no because the first octet of that SDU is not the first octet of the PDU. It begins in the middle of the PDU. And then if we look at 3, we start the PDU at the middle of the SDU, so we have a no again at the flag. And then if we look next to SDU 4, which again, here's a yes flag again because the first data octet of the SDU coincides with the first octet of the PDU. So we have a yes to show that that SDU, which begins the PDU, has its end as well in that same PDU as indicated by the location of the arrow of the address portion of the length indicator. For scenario A, but it's different for scenario B. Yes, that shows – what this shows here is why this is a solution to the problem. The problem that the Qualcomm proposal addresses is what happens if you have a dropped PDU. Do you have to resend? And with the prior – and this is what the 443 patent was addressing as well. With the prior, if you have a PDU that's dropped, because you don't – and then you get the next one. You do receive the next one. You don't know whether the data that begins there, you have a complete SDU, or you get it in the middle, and so you have to get the prior one retransmitted, and you need to throw this one out. It would just throw out the one that received because it didn't know whether it was the middle of an SDU or a whole SDU. And what this X here shows is that in scenario B, if PDU2 is dropped, you can distinguish – if you sort of cover over PDU2, PDU3 looks the same. If the receiver only received PDU3, it wouldn't know whether that SDU is complete or not. But by the flag, you would know that in scenario A, it is the start of the SDU, and in scenario B, it's not the start of the SDU. But this is exactly what the claims talk about. This is what the reference shows. So there isn't really a problem of whether the Qualcomm reference teaches the recited claim limitation. Did I answer your question? I'm sorry. Well, yeah, it's only just I don't know from my notes and what I recall of what Mr. Garris has said if he somehow has a new argument today or a different argument because he clearly thinks that the prior art does not line up with what his claims say. But the explanation you just gave was my understanding of what the court said. So I don't know whether that argument is waived or not expressed as well in the blue brief as my friend did today. But you didn't hear anything further from him today that you feel you need to respond further to? No, no. And finally, the issue of the length indicator, this is a semantic issue. The receiver is expecting a 7-bit header, and that's exactly what the Qualcomm proposal does. It just says we're going to say one bit of the length indicator we're going to use for the flag. The six bits that remain are used as an address or a location, but it's still a 7-bit length indicator. And we can see in the reference itself at Appendix 1684, that same page we were looking at, it says use one bit of the length indicator, meaning the flag, the one-bit flag is part of the length indicator. The remainder is an address. But there is nothing in the claims that requires every one of these seven bits to be used for an address or a location. Claims don't say that they had an opportunity to amend the claims. They did amend the claims, and they didn't say this. They could have said, where in the seven bits recite an address of up to 500 bits. They could have said that. They didn't do it. It's not in the claim. If your honors have any more questions, I'd be very happy to address them. If not, thank you, counsel. Mr. Piazza has some time. I would like to respond to two points. Number one, the last point that we heard about the amended claims, perhaps I'm missing something, but the amended claims on Apex 547 and 548 specify the PDU size of 125 octets. And then the dependent claims from there say you have to use a 7-bit, and they actually give the bit numbers, 1111100 is an example. You have to use those with an octet size of 125 octets. That means all the bits in that 7-bit length indicator are representing size. So I'm not sure I understand my friend's statement that we didn't propose claims that specified a PDU size because that's exactly what the proposed claims state. I would like to go back, though, because it is a critical point in my mind, to the idea that even under the board's findings, element 1B is not practiced. And this, reading the papers below and reading the briefing, it seemed like there was a little bit of shifts passing in the night. And I think I heard it again today, so I would just like to walk the court through this because this is an important point, and I think it's a clear grounds for reversal. Below in the petition at Apex 223, the petitioner said that Qualcomm's flag indicates that the beginning of a corresponding SDU is included in the PDU. In other words, in this PDU window, they said the beginning of that SDU is somewhere in there. Our response to that at 461 of the record was that doesn't say, like the claims require, that the beginning of the SDU starts at the beginning of the PDU. That's what we said to the board, and that's exactly the argument that the board recounted on Apex 22. At the top, two lines from the top, Qualcomm—this is Sissible arguing this— Qualcomm does not state that the beginning of the SDU starts at the beginning of the PDU. And what the board said, that is not persuasive because the first SDU is entirely included. But again—and this is a head-scratcher for me—that doesn't mean if you have the first SDU entirely included, that doesn't mean that you're going to start at the beginning of the PDU. How, if at all, do you map your argument onto Figure 3 that we've walked through with your friend on the other side? Sure, so Figure 3 doesn't give an example of when you have an octet that bleeds over into another PDU, and then you have a full, complete SDU in that PDU. That's what we showed on page 27 of our blue brief. And that is critical because that happens all the time. And that's shown in Figure 12 of the patent itself, and says you typically have this. And in Column 12 of the patent, they explain why that matters and why you have to have certain indications. One of those indications being the critical one here, that the first octet of the SDU is the first octet of the PDU, because it impacts the next length indicator and what you're going to use. And that indication is in Column 12. But if you take a look at Figure 3, this is a problem we had with the board. The board simply said, well, it so happens to be that these SDUs in Figure 3 do start at the beginning. That sounds like the classic kind of legal argument that an apparatus can practice a method claim one out of 100 times. But that's not what these claims require. The board's claim construction requires the information provided. It's kind of like an over-height detector of a truck on the highway where it says it's over height. But your claim requires that it be the weight. The weight's over 50 tons, and the light keeps coming on. And I say, aha, the light's on for every truck that's gone over 50 tons. But what the board found was that the light is going on for the over-height indicator. What the board found here is that the first full SDU in the PDU is entirely contained. That does not mean, as we repeatedly told the board, as we repeated in the briefing here on page 23, on page 44, on page 27, that does not mean that the first PDU octet is the same as the first octet of the SDU. That's the critical distinction. That's what even assuming the board's right, arguendo, if the board is right, the claims do not practice or, sorry, the claim combination does not disclose the required element 1B. Thank you, counsel. We will take the case on to submission.